DETROIT UNITED RAILWAY *v.* LAU.

EQUITY—FIDUCIARY RELATIONS—PROMOTERS OF CORPORATIONS.
  Defendant's brother, while engaged in obtaining rights of way for the Detroit, Rochester, Romeo & Lake Orion Railway, of which he was a stockholder, secured a land contract to defendant as trustee, of certain land in the village of Oxford, and the greater part of the purchase price was paid by the construction company which built the road.   Defendant was also its acting attorney.   Complainant subsequently became assignee of the property of the railway company, and completed the road on the default of the construction company. It found that a deed had been taken of the land in question in the name of defendant, although the property had been used continuously by the railway company for its corporate purposes, and the defendant had not claimed personal rights in the property prior to this suit:  *Held*, that a bill to compel a conveyance would lie.

Appeal from Oakland; Smith, J. Submitted April 28, 1909. (Docket No. 101.) Decided July 6, 1909.

Bill by the Detroit United Railway against Harry M. Lau and Belle Lau to compel the conveyance of certain real estate. From a decree for complainant, defendants appeal. Affirmed.

*Frank E. Jenkins,* for complainant.

*George M. Sayles & Harry M. Lau,* for defendants.

MOORE, J. The Detroit, Rochester, Romeo & Lake Orion Railway was organized under the laws of the State of Michigan for the construction and equipment of a railway line between the villages of Royal Oak and Oxford, Oakland county, and the village of Romeo, Macomb county, Mich. The Detroit Construction Company, Limited, also organized under the laws of the State of Michigan, had the contract for the construction and equipment of said railway. The Detroit, Lake Orion & Flint Railway, also a Michigan corporation, was organized to construct and equip a railway line between the village of Oxford, Oakland county, and the city of Flint, Genesee county, Mich. This company was duly organized, but never did any business except acquire the title to the right of way between the points for which it was organized to construct and equip a railway.

The building of the road over the right of way of the Detroit, Lake Orion & Flint Railway was carried on through the name of the Detroit, Rochester, Romeo & Lake Orion Railway by the Detroit Construction Company, Limited, as general contractor. John Winter, Oliver H. Lau, and Frank C. Andrews owned all the stock of the Detroit Construction Company, Limited, and were the principal owners of the stock of the Detroit, Rochester, Romeo & Lake Orion Railway. On or about July 27, 1901, a contract to sell the Detroit, Rochester, Romeo & Lake Orion Railway, Detroit, Lake Orion & Flint Railway, and certain other railway properties, to

the Detroit United Railway, also a Michigan corporation, was made. Some time after this a new corporation was organized known as the Detroit & Flint Railway, and the property of the Detroit, Rochester, Romeo & Lake Orion Railway was conveyed to the said Detroit & Flint Railway, and by it conveyed to the Detroit United Railway. At the time of the contract, July 27, 1901, the railway line had not been completed from Oxford to Flint, the original contract for construction was surrendered, and the Construction Company, Limited, continued in the completion of the line until on or about February 10, 1902, when, through the failure of Frank C. Andrews and the City Savings Bank of Detroit, Mich., it had to abandon the construction, and the same was completed by the Detroit United Railway.

Up to the time of the contract of July 27, 1901, Harry M. Lau was acting as attorney for the Detroit, Rochester, Romeo & Lake Orion Railway and said construction company, and a part of his duties was to procure rights of way south of Oxford between Oxford and Flint. He had nothing to do with the right of way except to assist in the condemnation proceedings. November 15, 1900, Oliver H. Lau purchased from Benjamin C. Moore and Eleanor Moore, his wife, the property in dispute, in the village of Oxford, on land contract, and took the title in the name of Harry M. Lau, trustee, of Detroit, Mich. On the 12th day of August, 1901, Harry M. Lau obtained a deed of the property covered by the contract from Mr. Moore and his wife to himself as grantee.

After the Detroit United Railway took possession on August 1, 1901, a controversy arose as to what property was covered by said contract. Harry M. Lau declined to deed the property to the complainant, and this proceeding was commenced to compel a conveyance of the land to complainant. The defendants answered, setting up the purchase of the land in dispute by Oliver H. Lau and disclaimed any interest thereto, except holding the legal title in trust for Oliver H. Lau.

Defendants contend that the bill of complaint should be dismissed, with costs to them, for the following reasons:

(1) The complainant failed to prove the contract alleged in the bill.

(2) The bill prays for the reformation of the deeds, which can be done only on two grounds: (a) Mistake. (b) Fraud.

(3) The *cestui que trust* was a necessary party defendant to the suit.

(4) The allegations of the bill are not sustained by the proof.

(5) The proof shows the complainant guilty of laches and negligence.

The land bought of Mr. Moore is something more than 181 feet one way and 270 feet the other way, and is at the junction of the complainant railway with the Pontiac, Oxford & Northern Railroad. The complainant road has a subway crossing upon this land, which goes under the Pontiac, Oxford & Northern Railroad. The case was heard in open court. The trial judge granted the relief prayed, but held that Dr. Lau had an equitable lien upon the land for $200 of the purchase price. The defendants have appealed. The complainant did not appeal.

Upon the hearing in this court each of the defenses urged in the court below is insisted upon. In addition to the facts already stated, the following facts are established by a clear preponderance of the testimony:

1. The primary object in obtaining the land was to provide for a crossing of the two roads and for making the necessary connections between them. Dr. Lau claims that all of the land which was not required for the company's right of way, car house, and station sites should remain his in consideration of his services to the company. There is no pretense that, if the railway had not required some of this land, it would have been purchased.

2. When the sale was made, Mr. Moore understood it was to the Detroit Construction Company. The first

payment, $200 in currency, was made to him by Dr. Lau, and the final payment, $300, was made by a check of the Detroit Construction Company. It is the claim of the complainant that all of the funds used to make the payment were the funds of the construction company, while it is the claim of defendants that the $200 paid by Dr. Lau was never refunded to him. It is not disputed that the final payment was made by the construction company.

3. The record shows Mr. Moore gave an option upon this land in August, 1900, that in September of that year grading was done, tracks, side tracks, and a " Y " were constructed upon it, and a good portion of the remaining part was used for storing railroad material.

4. After the contract from Mr. Moore to Harry M. Lau, trustee, was executed and before July 27, 1901, when the contract of sale to the complainant was made, Mr. Robert Oakman, land commissioner of complainant, for the purpose of learning what physical properties were owned by the grantors in the proposed sale, went over the line of the road and the property in question in company with the defendant Harry M. Lau, and saw the land in dispute with its siding, Y, and tracks, and used as a storage place for railroad material, and, though Mr. Lau knew the purpose of the visit of Mr. Oakman, he made no suggestion to him of any claim to the property either in himself or in his brother, Dr. Lau.

5. The land in controversy is needed by complainant and was needed by its predecessors. The contract which the complainant made for the purchase of the roads is sufficiently broad to cover any legal or equitable title that the predecessors of the complainant had in the land in question. If anyone has occasion to complain of the decree made in this case, it is not the defendants.

The decree is affirmed, with costs.

MONTGOMERY, OSTRANDER, HOOKER, and BROOKE, JJ., concurred.